UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------x
ANTONIO R. QUINONES,

        Movant,

  -against-                  **MEMORANDUM AND ORDER**
                                     Case No. 12-CV-6000 (FB)
UNITED STATES OF AMERICA,

        Respondent.
---------------------------------------------x

*Appearances*

| *For the Movant:* | *For the Defendants:* |
|---|---|
| GARY VILLANUEVA, ESQ. | RICHARD P. DONOGHUE, ESQ. |
| 11 Park Place, Suite 1601 | United States Attorney |
| New York, New York 10007 | Eastern District of New York |
|  | 271 Cadman Plaza East |
|  | Brooklyn, New York 11201 |
|  | By:   JASON M. MANNING, ESQ. |
|  |         MARCIA HENRY, ESQ. |
|  |         Assistant United States Attorneys |

**BLOCK, Senior District Judge:**

      This case is on remand from the Second Circuit for an evidentiary hearing on Antonio R. Quinones's claim that he was deprived of his Sixth Amendment right to conflict-free counsel because he agreed to pay his trial lawyer, Steven Rosen, a $4-million "success fee" contingent on an acquittal. Having conducted the requisite hearing, the Court finds the claim to be without merit.

* * *

It is undisputed that Rosen's alleged "success fee" was a type of contingency fee. Such fees are unethical in both Florida, where Quinones hired Rosen, and in New York, where Rosen provided his representation. *See* Rules Regulating the Fla. Bar, r. 4-1.5(f)(3)(B); N.Y. Rules of Prof'l Conduct, r. 1.5(d)(1).

More importantly for present purposes, a contingency-fee arrangement can create a conflict of interest. The Sixth Amendment right to counsel includes "a correlative right to representation that is free from conflicts of interest." *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).

The necessary showing for a Sixth Amendment violation depends on the nature of the conflict. A potential conflict of interest—in which the attorney *may* face "inconsistent duties at some time in the future," *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)—requires the defendant to make the usual showing of deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668 1984). *See Williams*, 372 F.3d at 102-03. For an actual conflict of interest—in which the interests of lawyer and client *do* "diverge with respect to a material factual or legal issue or to a course of action," *United States v. Schwartz*, 283 F.3d 76, 91 (2d Cir. 2002)—the defendant must show deficient performance, but prejudice is presumed. *See Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980) ("[A] defendant who

2

shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."). And some actual conflicts are so severe that they amount to per se violations of the Sixth Amendment. *See Williams*, 372 F.3d at 102.

In *Winkler v. Keane*, 7 F.3d 304 (2d Cir. 1993), the Second Circuit held that a contingency-fee arrangement created an actual conflict of interest, but was not a per se Sixth Amendment violation. *See id.* at 308 ("Accordingly, to prove a Sixth Amendment violation, Winkler must meet the *Cuyler* standard."). Thus, Quinones must prove (1) that he agreed to pay Rosen a "success fee," and (2) that the agreement adversely affected Rosen's performance. *See Schwartz*, 283 F.3d at 91 (citing *Cuyler*, 446 U.S. at 348).

On the first issue, Quinones testified that Rosen broached the subject of a success fee after the government agreed to release only $450,000 of the $16 million in assets it had seized from Quinones. *See United States v. Monsanto*, 491 U.S. 600, 614 (1989) ("[T]here is no exemption from § 853's forfeiture or pretrial restraining order provisions for assets which a defendant wishes to use to retain an attorney."). He testified that two or three months before trial, Rosen told him that "if we won the case, he wanted $4 million of that [seized] money." Tr. at 69. According to Quinones, Rosen assured him that "if he was going to be fighting for this money, he

would do everything in his power to win this case." *Id.* at 71. Quinones testified that, several times during trial, Rosen would make a gesture with four fingers or say something like, "Boy, you know, four million is mine." *Id.* at 72-73. Quinones's son, Herman, corroborated his father's story, testifying that he was present when Rosen and his father agreed to a success fee prior to trial, and that he saw Rosen make a four-finger gesture, in reference to the amount of the fee, several times during trial.

      Rosen, meanwhile, denied any contingency-fee agreement:

> Q.    Was there ever any agreement between you and Mr. Quinones that he pay you a contingency fee or a bonus if he were acquitted at trial?
>
> A.    Never.

Tr. at 153. He further testified that the criminal forfeiture aspect of the case was part of his responsibilities, but that he did not ask for or receive any additional payment for those duties. He testified that he and Quinones did not enter into any agreement regarding civil forfeiture in the event of an acquittal and that, to the best of his recollection, they did not even discuss the possibility that Rosen would represent Quinones in that eventuality.

      Rosen's testimony was, unfortunately, not corroborated by any written fee agreement. Surprisingly, a written fee agreement is not required in either New York

4

or Florida except for contingency and fee-splitting arrangements. *See* N.Y. Rules of Prof'l Conduct, r. 1.5(c, g); Rules Regulating the Fla. Bar, r. 4-1.5(f)(1), (g)(2). Though the lack of a written (non-contingent) fee agreement was not unethical, such an agreement would have greatly assisted the Court in deciding whose version of events to credit.

Fortunately, the Court need not determine whether Quinones agreed to pay Rosen a success fee. Even if he had, he would still have to show that the arrangement adversely affected Rosen's performance. Quinones's theory in that regard is that, because the success fee depended on an acquittal, it led Rosen to recommend against a plea offer in favor of going to trial. He testified that Rosen told him that "the Government was offering me 4 million [in forfeited assets] but that the prison time would be the same, more or less, [as a sentence after a guilty verdict]." Tr. at 74. After describing the offer, Rosen told Quinones that

> this would be my decision but that if I accepted the offer he would keep the entirety of the money in cash that was in his escrow account because he had invested too much time and why was I going to accept an offer when we had such a good case that we could fight.

*Id.* at 65. According to Quinones, Rosen's advice was: "Let's go after your money." *Id.* at 66.

Rosen, on the other hand, recalled that the offer was three years' imprisonment, or less than one half of the six to eight years Quinones would face

5

after a guilty verdict. Rosen considered it "a great plea offer based upon what [the] Government's evidence was," Tr. at 164, and recommended that Quinones accept it "without any hesitation," *id.* at 191. According to Rosen, Quinones refused, even though it meant depriving his son of an offer to plead guilty to a misdemeanor and serve only probation: "A father had an opportunity to let his son not be [saddled] with a felony conviction, and he turned it down and said: You're going to trial with me. There is no deal." *Id.* at 164.

Thus, as with the existence of the success fee, the testimony regarding Rosen's advice was sharply disputed. However, Rosen's version of events was corroborated by contemporaneous notes taken by his co-counsel, Paul Morris. According to those notes, the offer was for "max three years," but with an advisory guidelines range of 18 to 24 months. Resp.'s Ex. 10. That offer was conveyed to Quinones, who said, "No, I want a trial." *Id.* The following day, Morris offered his view of the risks in the case. Quinones replied: "I assume the risks." *Id.*

Morris's notes are immune to the effects that the 11-year delay between the criminal proceedings and the evidentiary hearing inevitably had on the witnesses' memories—particularly Rosen's. In addition, there is no claim that Morris would have benefitted from the alleged success fee. For these reasons, the Court credits Morris's notes and, accordingly, finds that Rosen accurately conveyed the plea offer

6

to Quinones, who refused it despite Rosen's recommendation. As a result, Quinones has not shown that the success fee, if it existed, adversely affected Rosen's performance.

* * *

Quinones's § 2255 motion is denied. Since the Court's finding that Quinones rejected the plea offer in favor of a trial will be reviewed only for clear error, *see Elfgeeh v. United States*, 681 F.3d 89, 91 (2d Cir. 2012), Quinones cannot show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 539 U.S. 473, 484 (2000). Accordingly, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　 /S/ Frederic Block
　　　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
October 17, 2018